UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CLINTON HARRIS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-3939** |
| **MARLIN GUSMAN, SHERIFF, NURSE HOWARD, DOCTOR GORE, SID OFFICERS, TIER DEPUTIES** | **SECTION "N"(4)** |

## REPORT AND RECOMMENDATION

Before the Court is a **Partial Motion for Judgment on the Pleadings Pursuant to Rule 12(c) (Rec. Doc. No. 19)** filed by the defendants, Orleans Parish Criminal Sheriff Marlin Gusman, Nurse Howard, and Dr. Gore. The motion was referred to a United States Magistrate Judge to conduct a hearing, including an Evidentiary Hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C)**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing.

**I.    Factual Summary**

   **A.    The Complaint**

The plaintiff, Clinton Harris ("Harris"), is an inmate housed in the Allen Correctional Center ("Allen") in Kinder, Louisiana. He filed this *pro se* and *in forma pauperis* complaint pursuant to

Title 42 U.S.C. § 1983 against Orleans Parish Criminal Sheriff Marlin Gusman, Nurse Howard, Dr. Gore, Special Investigation Officers, and unidentified Tier Deputies. Harris seeks monetary damages for the alleged untimely evacuation and unsafe conditions of confinement as a result of the defendants' negligence during Hurricane Katrina.

Harris alleges that, on August 29, 2005, he was incarcerated in the Templeman Jail, Phase I, tier A4, ("Templeman") within the Orleans Parish Prison system ("OPP"). He alleges that his cell was on the lower floor of the medical unit for disabled inmates. He alleges that he was abandoned in the jail while the flood waters rose to levels chest high. He claims that he was left without food, drinking water, medication, or treatment for his amputated leg. He also states that there was no electricity or ventilation and the sink and toilets backed-up. He further claims that the inmates' calls for help went unanswered.

Harris also claims that the deputies left their posts to check on their families, some of whom were being sheltered in other parts of the jail. The dormitory doors were locked and had to be broken down for the inmates to escape. He alleges that he actually drowned and another inmate administered CPR to resuscitate him. He claims that he was carried through the contaminated water because he could not swim with only one leg.

He claims that he attempted to inform the officers, who took him by boat to a bridge, about this incident but he was told to sit down and be glad he was still alive. He alleges that he was weak and needed medical attention and fluids. He states that he remained on the bridge until September 1, 2005, without medical attention, clean drinking water, or clean clothes. He claims that he had to sleep where he sat and was maced by guards for no apparent reason. He also claims that the guards

shot another inmate who was calling for help from atop another building. He states that he also saw another body floating in the water.

That same day, he was transported by bus to Elayn Hunt Correctional Center. He was placed in a visitation area where he slept until the next day. On September 2, 2005, he was sent to the Steve Hoyle Rehabilitation Center ("SHRC") in Tallulah, Louisiana. He remained there until December 12, 2005, when he was sent to the Forcht-Wade Correctional Center ("FWCC") in Keithville, Louisiana. He was later sent to Allen, where he remains today.

Harris alleges that, as a result of the foregoing events, he suffered nausea and vomiting so severe it led another inmate to believe had was dying. He also claims that the water could have caused infection to his amputated leg, all because the medical and security staffs abandoned their posts.

Harris seeks monetary damages against the defendants for his emotional and psychological injuries and denial of medical treatment. He also seeks to make accountable the Internal Affairs Office, ACLU directors, and the Attorney General's Office, none of whom are named defendants in this action. He seeks compensation for each day he remained in OPP during the storm and after.

**B.     The *Spears* Hearing**

On November 17, 2006, the undersigned Magistrate Judge conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny.[2] Harris testified that his right leg was amputated above the

---

[1] 766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims. *Spears*, 766 F.2d at 180. The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). *Wilson v. Barrientos*, 926 F.2d 480, 481 (5th Cir. 1991).

[2] Rec. Doc. No. 15. The plaintiff and counsel for the defendants participated by telephone. The plaintiff was sworn prior to testifying. The cassette tape of the hearing is being forwarded to the custody of the Court Recording Unit along with a copy of this order.

knee on May 10, 2005, as a result of bone cancer. He was returned to the Templeman Jail medical unit and placed in tier A4, on the first floor, one or two weeks before Hurricane Katrina landed. He was wheelchair bound and assigned to a lower bunk.

He claims that on the Saturday before the storm, Chief Rudy told the inmates to pack their belongings to prepare to be transferred. On Sunday, he received a meal around 11:00 a.m. and was told by Deputy Miami Williams and Deputy Caretta that they did not know when or if the inmates would be moved. He also alleges that Nurse Howard and Dr. Gore told the inmates on Sunday that they had not yet received instructions to move the inmates. Harris claims that, in spite of this, at some point before or during the storm, the inmates on tiers A1 and A3, for AIDS and diabetic patients, were moved. He claims that, after Sunday, he never saw the deputies or medical staff again. He also alleges that he did not receive his medication on Sunday or for the next four days.

Harris further testified that the water continued to rise after the storm until it reached chest high. He stated that he was forced to stand on his left leg and hold onto the window sill. He also claims that, on Tuesday evening, he almost drowned in the rising water in the jail. He stated that an inmate, Joseph Jones, performed CPR to revive him. Harris claimed that, by Wednesday morning, the inmates had broken a window and got someone's attention to send help.

He stated that officials came for them on Wednesday morning around 11:30 a.m. He was carried by other inmates to the gymnasium on the third floor. He claims that he continued to throw up because he had swallowed some of the water while waiting in the cell.

Later that day, he was carried downstairs. He was placed on a temporary bed and floated to a boat. He was then taken to the Broad Street overpass. While there, he claims that one inmate told

4

a guard that he had almost drowned and was throwing up.  The guard allegedly told Harris to sit down and be glad that he was alive.

Harris also stated that he was not given food, water or blankets while on the bridge.  He claims that one inmate was maced when he asked for water.  He remained there overnight.

Harris claims that his amputated leg was still swollen from the surgery and because the staples had just been removed before the storm.  He complained that he had to stand with the amputated leg in the contaminated water because the bunk beds in his cell were mostly below the water line.

He further stated that, on Thursday morning, he was taken by boat to the Interstate, where inmates carried him to a bus.  The bus took the inmates to Hunt, where he received a bologna sandwich, cake and water.  While at Hunt on Thursday and Friday, he received two other meals.  He claims, however, that he was not given any medical attention and still had to either stand on his left leg or be carried by inmates.  On Friday evening, he was transferred to SHRC in Tallulah, Louisiana.  Harris claims that he arrived there around 1:00 a.m. and a wheelchair was provided.  He claims that he also received a shower, clothes, medical tests, and shots.  He remained in that facility until December of 2005.

Harris stated that he was then transferred to FWCC, where he also received a wheelchair, clean clothes, and medical attention.  He was later sent to Allen on January 17, 2006.  He stated that he continued to receive medical treatment for his leg and other conditions, including a bone disease, osteoporosis, which has caused holes in the inside of his bones.  He is being treated for that with calcium pills and pain medication.

Harris also testified that he did not want to pursue a claim against the two deputies, Ms. Williams or Ms. Caretta, because he felt they were only acting under the direction of the Sheriff. He also complains that Nurse Howard and Dr. Gore failed to give him medication on Sunday and were waiting for instructions from the prison officials to move them. He stated that the Sheriff should have evacuated the inmates sooner and should not have ignored the inmates left in tier A4.

### C. The Defendants' Partial Motion for Judgment on the Pleadings

The defendants, Sheriff Gusman, Nurse Howard, and Dr. Gore, filed the instant motion seeking dismissal limited to Harris's claim regarding the failure to evacuate inmates from the prison before the storm. The defendants do not seek ruling at this time on Harris's claims of alleged intentional indifference to his medical needs. In that regard, the Court will consider the motion only as it seeks dismissal of Harris's claim that the defendants failed to take adequate measures to evacuate him before Hurricane Katrina struck.

In his opposition, Harris alleges that the Sheriff should be held liable for failing to evacuate the prison in light of the mandatory orders issued by the governor.[3] He further alleges that, while the Sheriff can not be held vicariously liable, the Sheriff was the final policy maker and must be held liable for failing to make the decision to evacuate in light of the impending danger from Hurricane Katrina.

## II. Standard of Review

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." The standard for addressing a Rule 12(c) motion is the same as that used for deciding

---

[3]Rec. Doc. No. 21.

6

motions to dismiss pursuant to Rule 12(b)(6).  *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 313 n.8 (5th Cir. 2002) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1368 at 591).

Thus, a motion brought pursuant to Rule 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts. *Great Plains Trust Co.*, 313 F.3d at 313 (quoting *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir.1990)).  The query for the Court is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief.  *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir.2001) (quoting *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 n.8 (5th Cir.2000)).

The Court can dismiss a claim under Fed. R. Civ. P. 12(c) when it is clear that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir.1999) (citing *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir.1990)).  In considering the motion, the pleadings should be construed liberally and judgment on the pleadings granted only if there are no disputed issues of fact and only questions of law remain. *Hughes*, 278 F.3d at 420 (citing *Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 891 (5th Cir.1998)). "In analyzing the complaint, we will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id*. (citing *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir.1996)).

The Court will not, however, accept as true conclusory allegations or unwarranted deductions of fact.  *Great Plains Trust Co.*, 313 F.3d at 312-13 (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)).  "The issue is not whether the plaintiff will ultimately prevail,

but whether he is entitled to offer evidence to support his claim. Thus, the court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Jones*, 188 F.3d at 324 (citations omitted).

### III.     Failure to Evacuate the Prison

Harris alleges that the Sheriff should have evacuated the inmates from the prison before Hurricane Katrina made landfall. He claims that the Sheriff was on notice of the danger of the storm as a result of the announcements by the governor and the media. Harris also alleges that Nurse Howard and Dr. Gore, along with Chief Rudy, the warden at his facility, were anticipating that the inmates on the medical tiers would be evacuated. However, no one ever came to move them before the storm. He also claims that Nurse Howard and Dr. Gore told him that they were waiting for authority from prison officials to evacuate the medical unit. He therefore attributes their failure to act to the prison officials, specifically Sheriff Gusman.

Harris also claims that he was told that, by Wednesday morning, the Sheriff was told that inmates were left on tier A4, where he was housed, and did not send anyone to rescue them until later that day. He complains that as a result of the rising water, he nearly drowned, exposed his new amputation site with contaminated water, which may have caused an infection, and went without medication and food for several days.

The Eighth Amendment's prohibition on "cruel and unusual punishments" forbids conditions of confinement "which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society' . . . or which 'involve the unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976) (citations omitted). "[C]onditions that cannot

be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

Proof of an individual defendant's personal involvement in the alleged wrong is, of course, a prerequisite to his liability on the claim for damages under §1983. However, a supervisory official, like Sheriff Gusman, cannot be held liable pursuant to § 1983 under any theory of *respondeat superior* simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights. *See Alton v. Texas A&M University*, 168 F.3d 196, 200 (5th Cir. 1999); *see also Baskin v. Parker*, 602 F.2d 1205, 1220 (5th Cir. 1979). Moreover, a state actor may be liable under § 1983 only if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345 (5th Cir. 1981); *see also Watson v. Interstate Fire & Casualty Co.*, 611 F.2d 120 (5th Cir. 1980).

Thus, Sheriff Gusman cannot be held liable for the actions of or failure to act by his subordinates and employees, such as the doctor, nurse or warden. In this case, Harris does not allege that Sheriff Gusman knew of a particular danger to him and failed to take action in a way so as to be indifferent to his safety. Harris has not alleged that the Sheriff personally knew of his medical condition or his location in the jail that would flood two days later. In fact, Harris alleges only that Chief Rudy, whom he has not named in this suit, Nurse Howard and Dr. Gore were the only people who told him that he should be prepared to be moved from his cell.

Furthermore, to the extent Harris asserts that Sheriff Gusman acted negligently in responding to or preparing for this emergency situation, his claims still do not entitle him to relief. Acts of

negligence do not implicate the Due Process Clause such to give rise to a claim under § 1983. *See Daniels v. Williams*, 474 U.S. 327, 328 (1986); *see also Davidson v. Cannon*, 474 U.S. 344 (1986). Allegations amounting to negligence cannot support a § 1983 claim for violation of the Eighth Amendment. *Eason v. Thaler*, 73 F.3d 1322, 1328-29 (5th Cir. 1996) (noting no negligent deprivation of religious rights or gross negligence in permitting a gas leak to occur); *Hare v. City of Corinth, Ms.*, 74 F.3d 633, 641-42, 646 (5th Cir. 1996) (finding no negligent failure to protect); *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993) (noting that negligent medical care does not constitute a valid claim under § 1983); *Doe v. Taylor Indept. School Dist.*, 975 F.2d 137, 142 (5th Cir. 1992), *vacated on other grounds*, 15 F.3d 443 (5th Cir. 1994) ("Even when constitutional liberty interests are implicated, not all bodily injuries caused by state actors give rise to a constitutional tort, for it is well settled that mere negligence does not constitute a deprivation of due process under the Constitution.")

Instead, the plaintiff must show that an official acted with deliberate indifference to be liable under § 1983. An official is deliberately indifferent to an inmate's health and safety in violation of the Eighth Amendment "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Jones*, 188 F.3d at 326. "Deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of harm." *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 459 (5th Cir. 2001).

In this case, Harris has made no such showing of an intentional indifference by Sheriff Gusman. Harris does not allege that Sheriff Gusman ignored a known risk of danger to his safety or medical needs. Instead, Harris recognizes that the Sheriff may only have known on Wednesday

morning that inmates were left on tier A4 and that he in fact sent rescuers to get them that same day. Otherwise, the flooding as a result of the levee breaches after Hurricane Katrina passed through the metropolitan area was unprecedented and unanticipated. Gusman was under no constitutional burden to protect Harris from the unknown and unexpected.

Harris has also failed to show that the temporary conditions caused by the hurricane violated his constitutional rights. In order to prove that the conditions of his confinement violated the Constitution, an inmate must show, "that, from an objective standpoint, [they] denied him the minimal measure of necessities required for civilized living". *Farmer*, 511 U.S. at 834. An episodic act or omission of a state jail official does not violate an inmate's constitutional right to be secure in his basic human needs unless he demonstrates that the official acted or failed to act with deliberate indifference to those needs. *Hare*, 74 F.3d at 633.

Furthermore, federal courts have repeatedly held that the Constitution does not mandate that prisons provide comfortable surroundings or commodious conditions. *Talib v. Gilley*, 138 F.3d 211, 215 (5th Cir. 1998). For these reasons, a short term sanitation problem, although admittedly unpleasant, does not amount to a constitutional violation. *Whitnack v. Douglas County*, 16 F.3d 954, 958 (8th Cir. 1994); *Knop v. Johnson*, 977 F.2d 996, 1013 (6th Cir. 1992); *Robinson v. Illinois State Corr. Ctr.*, 890 F. Supp. 715, 720 (N.D. Ill. 1995). "[J]ails must provide only reasonably adequate hygiene and sanitation conditions." *Burton v. Cameron County*, 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing *Green v. Ferrell*, 801 F.2d 765, 771 (5th Cir. 1986)).

In sum, Harris has not alleged that Sheriff Gusman, Nurse Howard or Dr. Gore personally acted with deliberate indifference to his safety or to the sanitation of the prison when they failed to evacuate him before the unprecedented events and temporary conditions resulting after Hurricane

11

Katrina, one of the largest disasters that the United States has experienced in its history. Harris recognizes that the officials realized the risk of harm caused by the rising waters and successfully evacuated the inmates from the prison, albeit under difficult and unpleasant circumstances. Without a showing of a deliberate indifference, Harris's claims against Sheriff Gusman, Nurse Howard, and Dr. Gore, arising out of the failure to evacuate the prison before the storm should be dismissed for failure to state a claim for which relief can be granted.

The Partial Motion for Judgment on the Pleadings should be granted dismissing only Harris's claim for failure to evacuate him before the storm. As conceded in the motion, the plaintiff's claims of medical indifference were not addressed by the motion and remain pending before the District Judge for further proceedings.

## IV.    Recommendation

It is therefore **RECOMMENDED** that the **Partial Motion for Judgment on the Pleadings Pursuant to Rule 12(c) (Rec. Doc. No. 19)** filed by the defendants, Orleans Parish Criminal Sheriff Marlin Gusman, Nurse Howard, and Dr. Gore, be **GRANTED** and the plaintiff, Clinton Harris's § 1983 claim for failure to evacuate him from the prison before Hurricane Katrina made landfall is **DISMISSED WITH PREJUDICE**. The plaintiff's claims of medical indifference against these defendants remain pending before the District Judge for further proceedings.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from

a failure to object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this ____30th____ day of _____May_____, 2007.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**